O

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIGITECH IMAGE TECHNOLOGIES, LLC, | Case No. 8:12-cv-1675-ODW(MRWx) |
| Plaintiff, | **ORDER DENYING LEAF IMAGING LTD.'S MOTION TO DISMISS [26]** |
| v. | |
| MAMIYA DIGITAL IMAGING CO., LTD.; LEAF IMAGING LTD. D/B/A MAMIYALEAF and MAMIYA AMERICA CORPORATION, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Digitech Image Technologies, LLC brought a patent-infringement Complaint against, among others, Defendant Leaf Imaging Ltd., an Israeli company. Leaf moves to dismiss the Complaint for lack of personal jurisdiction. Leaf contends that it is not subject to personal jurisdiction in California because it conducts no direct sales in California and maintains no offices, employees, agents, or bank accounts in this state. But Leaf does have an established distribution relationship with a United States-based company and a website that specifically lists seven California retail locations at which consumers may purchase Leaf products—all indicating that Leaf contemplated that its products would reach California through the stream of commerce. The Court finds that under Federal Circuit case law, Leaf's contacts with

California are sufficient to subject it to personal jurisdiction in this state.  The Court accordingly **DENIES** Leaf's Motion to Dismiss.

## II.   FACTUAL BACKGROUND

Leaf is an Israeli digital-camera company that is incorporated and has its principal place of business in Kfar Saba, Israel.  (Kalinski Decl. ¶ 2.)  Leaf does not own property, pay taxes, maintain a bank account, employ anyone, or sell directly to consumers in the United States.  (*Id.* ¶¶ 3–7.)

Leaf sells its products in the United States through Defendant Mamiya America Corporation, a distributor located in New York.  (*Id.* ¶ 7–8.)  Mamiya America Corporation is an independent entity from Leaf; Leaf does not exercise any control over Mamiya.  (*Id.*)

Leaf maintains a website that is available worldwide.  (Edmonds Decl. ¶ 3, Ex. 1; *see* Kalinski Decl. ¶ 9.)  Leaf lists seven California retail locations on its website where consumers can purchase its products.  (Edmonds Decl. Ex. 1.)  But Leaf does not make sales or accept payments directly through its website.  (Kalinski Decl. ¶ 9.)  Neither does Leaf specifically direct advertisements or marketing to California residents or design products especially for California.  (*Id.* ¶¶ 10–11.)

On October 1, 2012, Digitech filed a patent-infringement Complaint against Defendants.  Digitech alleges on information and belief that all Defendants, including Leaf, are subject to "specific and/or general personal jurisdiction" in California, particularly due to sales of the allegedly infringing products in California.  (Compl. ¶ 4.)

On March 7, 2013, Leaf moved to dismiss the Complaint for lack of personal jurisdiction.  (ECF No. 26.)  Digitech timely opposed on March 18, 2013.  (ECF No. 29-1.)  That Motion is now before the Court for decision.

## III.   LEGAL STANDARD

Despite being properly served with process, a defendant may challenge a district court's exercise of personal jurisdiction under Federal Rule of Civil Procedure

12(b)(2).   Federal Circuit case law applies to the personal-jurisdiction analysis in cases "intimately involved" with patent law.  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).   Prediscovery, a plaintiff must only establish a prima facie showing of personal jurisdiction over the defendant, and all factual disputes must be resolved in the plaintiff's favor.  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the exercise of personal jurisdiction over a nonresident defendant unless that defendant has certain meaningful contacts with the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).   District courts generally assess whether the defendant would be subject to personal jurisdiction in a court of general jurisdiction in the forum state. Fed. R. Civ. P. 4(k)(1)(A).

## IV.   DISCUSSION

Leaf moves to dismiss Digitech's patent-infringement Complaint for lack of personal jurisdiction.  Leaf argues that since it has no offices, property, sales agents, employees, or other direct contacts with California, this Court lacks either specific or general jurisdiction over it.  Digitech responds only to the specific-jurisdiction issue. Digitech contends that Leaf's distribution relationship with Mamiya demonstrates that Leaf was aware that its allegedly infringing products would reach California through the stream of commerce, especially in light of Leaf listing seven California retail locations on its website at which its products are sold.  The Court considers each party's arguments in turn.

### A.   General jurisdiction

A district court may only exercise general jurisdiction over a nonresident defendant when "the defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action." *Elecs. for Imaging*, 340 F.3d at 1349 (citation omitted).  But sporadic and insubstantial forum-state

/ / /

contacts will not suffice for general jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

In its Complaint, Digitech simply alleges on information and belief that Leaf is subject to general jurisdiction. Digitech bases all of its jurisdictional allegations in the Complaint on Leaf's allegedly selling or inducing others to sell its allegedly infringing products in California, having an interactive website available to California residents, and regularly engaging in business in the forum state from which it allegedly derives substantial income. But Digitech does not directly address the general jurisdiction argument in its Opposition.

Leaf contends that it is not subject to general jurisdiction in California, because it has no offices, property, employees, bank accounts, or other contacts with California. Neither does Leaf pay taxes in this state or directly sell to California consumers.

Considering Leaf's dearth of direct contacts with this state, the Court finds that Leaf is not subject to general jurisdiction in California. If sporadic and insubstantial contacts with the forum state are insufficient to warrant the exercise of general jurisdiction, then it follows that lacking any direct contacts even further erodes any general-jurisdiction foundation. It is also telling that Leaf does not even attempt to argue the issue in its Opposition, relying instead on specific jurisdiction.

**B.    Specific jurisdiction**

Evaluation of specific jurisdiction entails two inquiries: (1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of jurisdiction would comport with due process. *Elecs. for Imaging*, 340 F.3d at 1349. Because California's long-arm statute is coextensive with federal due-process requirements, this Court need only focus only on the latter analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see also* Cal. Civ. Proc. Code § 410.10.

/ / /

The Federal Circuit employs a three-prong test to assess whether a court may exercise specific jurisdiction: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

     *1.     Purposeful direction*

The United States Supreme Court has held that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980).

In *Asahi Metal Industries Co. v. Superior Court of California, Solano County*, the Court split on whether awareness by the defendant that a product it places into the stream of commerce will reach the forum state suffices for purposeful direction. 480 U.S. 102 (1987) (plurality opinion); *compare id.* at 112 (requiring some additional conduct by the defendant beyond mere awareness that the product will reach the forum state), *with id.* at 117 (Brennan, J., concurring in judgment) ("As long as a participant in [the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.").

The Supreme Court attempted to jettison the foreseeability test in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). But since the Court split again, the Federal Circuit interpreted that personal-jurisdiction law remains the same post-*McIntyre*, that is, the stream-of-commerce test remains intact. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012).

Digitech argues that Leaf is fully aware that its allegedly infringing products will and do reach California through the stream of commerce due to Leaf's established

distribution relationship with Mamiya.  Digitech adduced screenshots from Leaf's website depicting seven California retail locations at which consumers could purchase Leaf products.  Digitech also verified that Leaf products are available for sale from at least one of the forum-state retailers.

Leaf responds that, not only does it completely lack any direct contacts with California, but it only distributes its products to Mamiya in New York and has no downstream control over where the products are ultimately marketed and sold.  Leaf further contends that its website is generally available to anyone with Internet access, and Leaf does not conduct sales or accept payments through the website.

Digitech correctly analogizes to the Federal Circuit's opinion in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).  In that case, the plaintiff brought a patent-infringement action against a Chinese manufacturer of ceiling fans.  *Id.* at 1560.  The manufacturer did sell directly to anyone in the forum state but rather used a United States-based distributor.  *Id.*  The manufacturer also had no service-of-process agent, employees, or assets in the forum state.  *Id.*  The district court dismissed the manufacturer for lack of personal jurisdiction, but the Federal Circuit reversed.  *Id.* at 1572.  The court held, "The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel.  The cause of action for patent infringement is alleged to arise out of these activities.  No more is usually required to establish specific jurisdiction." *Id.* at 1565.

The facts of this case bear a striking resemblance to those in *Beverly Hills Fan*.  Like the Chinese manufacturer in that case, Leaf has no assets, employees, agents, or other direct contacts with the forum state.  But Leaf does have its established distribution relationship with Mamiya.  Leaf also specifically lists on its website seven California retail locations at which consumers may purchase its products—all of which provide compelling evidence that Leaf contemplated that its products would foreseeably be carried into California through the stream of commerce.  Digitech has

/ / /

1    accordingly carried its burden of establishing a prima facie showing of specific
2    jurisdiction through its Complaint and declaration supporting its Opposition.

3         Leaf's reliance on *J. McIntyre Machinery* at this stage of the case is unavailing
4    for at least three reasons.  First, the Supreme Court split on which stream-of-
5    commerce formulation applied to the facts in that case.  Second, the plurality opinion
6    emphasized that the British manufacturer had only delivered four of its machines to
7    the forum state and that the facts only showed an intent to serve the general U.S.
8    market as opposed to the forum state specifically.  131 S. Ct. at 2790.  In contrast,
9    Digitech has made at least a prima facie showing of an established distribution
10   channel between Leaf, Mamiya, and ultimately California.  Leaf's own website
11   envisages that California residents will purchase Leaf products in this state.  Finally,
12   the Federal Circuit specifically reviewed the effect of *J. McIntyre* and determined that
13   *Beverly Hills Fan* still controls the personal-jurisdiction inquiry.  *AFTG-TG, LLC*, 689
14   F.3d at 1363–64.

15        2.    *Claims arise out of forum-state activities*

16        Since Digitech must only establish a prima facie showing of personal
17   jurisdiction at this motion-to-dismiss stage, the Court must accept as true its allegation
18   that Leaf sold allegedly infringing products in California.  Leaf's alleged infringement
19   then arises out of its forum-state activities, namely, the sale of those products.

20        The Court therefore finds that Leaf is subject to specific jurisdiction in
21   California.

22        3.    *Reasonableness of the exercise of jurisdiction*

23        Even if a defendant is otherwise subject to personal jurisdiction in the forum
24   state, the exercise of personal jurisdiction still must not offed "traditional notions of
25   fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash., Office of Unemp't
26   Comp. & Placement*, 326 U.S. 310, 316 (1945).  The defendant bears the hefty burden
27   of establishing a "compelling case" demonstrating that the exercise of personal
28   jurisdiction would be unreasonable.  *Burger King Corp.*, 471 U.S. at 477.

The Supreme Court has expounded several factors a district court must consider in evaluating the reasonableness of the exercise of jurisdiction: (1) the burden on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113.

Leaf argues that, as an Israeli company, it would be "inconvenienced" by having to litigate in California in a foreign legal system. Digitech disagrees, arguing that Leaf failed to establish the requisite compelling case of unreasonableness.

The Court agrees with Digitech. Leaf's "inconvenience" in having to litigate in California hardly suffices to divest this Court of personal jurisdiction over Leaf. Undoubtedly every defendant, foreign or domestic, experiences some degree of displeasure in having to defend itself. But of necessity, that reality does not militate against an exercise of jurisdiction.

The other *Asahi* factors establish a compelling case *for* the exercise of personal jurisdiction. The federal-court system has a strong interest in resolving Digitech's myriad cases in one unified forum—California. Digitech is also a "citizen" of California in that it is formed under California law and has its principal place of business here. Digitech also has a strong interest in litigating in its home state, further undergirding the conclusion that this Court may reasonably exercise specific jurisdiction over Leaf.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## V.   CONCLUSION

2      For the reasons discussed above, Leaf Imaging Ltd.'s Motion to Dismiss is

3 **DENIED**.

4      **IT IS SO ORDERED.**

5

6      April 8, 2013

7

8      _____

9                    **OTIS D. WRIGHT, II**

10            **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28